IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

CASE NO.: 1:23-CR-00056-JKB

vs.

BRANDON CLINT RUSSELL,

_____/

**MOTION REQUESTING COURT TO APPOINT A MAGISTRATE JUDGE OR SPECIAL MASTER TO SEARCH BRANDON RUSSELL'S PHONE FOR ATTORNEY-CLIENT PRIVILEGED AND WORK PRODUCT INFORMATION**

Brandon Russell, through undersigned counsel, hereby moves this Honorable Court to appoint a United States Magistrate Judge or Special Master to search the contents of his phone for attorney-client privileged and work product information. In support of this motion, Mr. Russell states as follows:

1. Brandon Russell has been indicted along with his co-accused on a single count of conspiracy to damage an energy facility in violation of Title 18, U.S.C. § 1366(a).

2. The government indicated that it is searching Mr. Russell's phone.

3. On February 14, 2023, defense counsel requested the government to stop searching Mr. Russell's phone, unless the government allowed a neutral judge to conduct the search. Defense counsel made this request because there is protected information on the phone—namely information that falls under the attorney-client privilege (ACP) and/or work product (WP) doctrine. To substantiate defense counsel's position, defense counsel provided the government with *In re Search Warrant Issued June 13,* 2019, which holds separating WP and ACP information from other information found on electronic devices is a "judicial function"—not an "executive

1

function;" a government-created "filter team" is inadequate to separate such protected and unprotected information from electronic devices because a government-created filter team is part of the executive function. *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 164 (4th Cir. 2019), *as amended* (Oct. 31, 2019).

4. On February 15, 2023, defense counsel and the government attempted to resolve their legal differences but to no avail. To the government's credit, they agreed to suspend their search in order to give defense counsel the opportunity to file the instant motion.

5. The government contends that it is only searching for "toll records" and thus, there is no ACP or WP protected information in such records. The defense disagrees. Until a court can resolve this important legal issue, the government agreed to stop its search. This motion is the first step to having this Court resolve the issue. Notably, the government refused to provide the defense with the search warrant or any other facts about its search, except that the government is searching Mr. Russell's phone for "toll records." The government explained that it could not provide the search warrant or additional information because the search warrant is under seal.

6. As this Court knows, the ACP is "the oldest of the privileges for confidential communications known to the common law," and its purpose is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). It is a privilege "rooted in the imperative need for confidence and trust," *Trammel v. United States*, 445 U.S. 40, 51 (1980), which for centuries has been understood to require that the client believes in the attorney's ability to preserve the client's confidences. 8 Wigmore, Evidence (McNaughton Rev. 1961), § 2290 (privilege already well-established in reign of Elizabeth I). It "recognizes that sound legal advice or advocacy serves public ends and that such advice or

advocacy depends upon the lawyer's being fully informed by the client." *Upjohn*, 449 U.S. at 389. The privilege "rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." *Id.* (quoting *Trammel*, 445 U.S. at 51). Such "assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure." *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888). So robust is the privilege, and so important is a client's faith that confidences will be maintained, that the privilege survives even the client's death. *Swidler & Berlin v. United States*, 524 U.S. 399, 407–11 (1998). Even when protecting the ACP results in some loss of evidence being available for use in investigations or judicial proceedings, courts have justified this loss "in part by the fact that without the privilege, the client may not have made such communications in the first place." *Swidler & Berlin*, 524 U.S. at 408. "This unspoken 'evidence' will therefore serve no greater truth-seeking function than if it had been spoken and privileged." *Jaffee v. Redmond*, 518 U.S. 1, 12 (1996).

7. The need for confidentiality also extends to a lawyer's WP materials, because "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). "Although the work-product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital." *United States v. Nobles*, 422 U.S. 225, 238 (1975); *cf. United States v. Oppenheimer*, 242 U.S. 85, 87 (1916) (Holmes, J.) ("It cannot be that the safeguards of the person, so often and so rightly mentioned with solemn reverence, are less than those that protect from a liability in debt."). Protecting defense counsel's WP aids the truth-seeking function of our adversarial system of justice. "The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or

innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case." *Nobles*, 422 U.S. at 238. "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *Id.* Because "the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system," it is "necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself." *Id.* at 238–39. For these reasons, the Federal Rules of Criminal Procedure prohibit government "discovery or inspection" of "(A) reports, memoranda, or other documents made by the defendant, or the defendant's attorney or agent, during the case's investigation or defense" or of a "(B) a statement made to the defendant, or the defendant's attorney or agent, by: (i) the defendant; (ii) a government or defense witness; or (iii) a prospective government or defense witness." Fed. R. Crim. P. 16(b)(2) (excepting only scientific and medical reports). When analyzing an objection to government inspection of defense counsel's WP, the Court must account for the chilling effect that disclosure would have on the legal profession as a whole: Were such materials open to [prosecutors] on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served. *Nobles*, 422 U.S. at 237 (quoting *Hickman*, 329 U.S. at 511).

8.    Just as in the criminal context, in the civil context WP is protected. "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). Courts in the Fourth Circuit concur that "[t]he identity of persons interviewed in anticipation of litigation

generally is protected under the work product doctrine. The particulars and the substance of such communications also is protected." *Lefkoe v. Jos. A. Bank Clothiers*, No. CIV.WMN-06-1892, 2008 WL 7275126, at *12 (D. Md. May 13, 2008) (citations omitted); *accord, e.g., In re Jiffy Lube Sec. Litig.*, No. CIV.A. Y-89-CV-1939, 1990 WL 10009147, at *1 (D. Md. Oct. 2, 1990). Any communications between Mr. Russell and defense counsel, as well as any information derived from the fact of those communications, is protected under both the ACP and the WP doctrine. For example and hypothetically speaking, if in anticipation of possible litigation, Mr. Russell or his counsel contacted another individual (or third-party) after consulting one another, those communications would be protected by the ACP and the potential meaning of those communications falls under the WP doctrine. Specifically, the communication between Mr. Russell and his counsel fall under the ACP and WP doctrine. Also, the communication that Mr. Russell or his counsel had with another individual (or third-party) is also potentially WP, depending on the context of that call and the identity of the person called (e.g., an investigator, an expert witness, or a percipient witness). As such, contrary to the government's position, the ACP and WP analysis is highly fact-laden and context-based; the ACP and the WP doctrine could protect even "toll records" from disclosure to the government.

9.      Given the above, the government cannot have *the identity* of people that defense counsel or Mr. Russell might have spoken with in anticipation of litigation. The government also does not have the facts and the context to begin the analysis of what is ACP and WP. That is why Mr. Russell respectfully requests a magistrate judge or special master to whom he can provide, in an *ex parte* manner, the facts and context of certain phone calls (i.e., the toll record data). With those facts and context, a neutral judge can then determine whether that data/information is protected under the ACP or WP doctrine. As this Court knows, when there is a dispute in the civil

5

context about ACP and WP, a judge makes the determination. It stands to reason that in the criminal context when the stakes are higher—a person's liberty hangs in the balance—ACP and WP should be afforded at least as much protection as these bedrock legal principles have in the civil context. The government's typical use of a government-created "filter-team" is not a judge and thus, it is less protection than is merited. To allow the government to make determinations of its adversary's ACP and WP via a filter team would put "the government's fox [] in charge of [Mr. Russell's] henhouse, and [the government] may err by neglect or malice, as well as by honest differences of opinion." *In re Search Warrant*, 942 F.3d at 177–78.

WHEREFORE, based upon the foregoing, defendant would respectfully request that this Honorable Court grant the instant motion, order the Government not to reinitiate its search of Mr. Russell's phone, and appoint a Magistrate Judge or Special Master to search Brandon Russell's phone for information protected under the ACP or WP doctrine.

Dated: February 20, 2023

Respectfully submitted,

*/s/ Ian J. Goldstein*
Ian J. Goldstein (Admitted *pro hac vice*)
ian@iangoldsteinlaw.com
LAW OFFICES OF IAN GOLDSTEIN P.A.
330 Clematis Street, Suite 209
West Palm Beach, FL  33401
Tel: (561) 600-0950

Kobie A. Flowers (Bar No. 16511)
kflowers@browngold.com
Brown, Goldstein & Levy, LLP
120 E. Baltimore Street, Suite 2500
Baltimore, Maryland 21202
Tel: (410) 962-1030

Counsel for Brandon Russell

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was electronically filed via CM/ECF which will serve all parties of record on this 20th day of February, 2023.

                                            Respectfully submitted,

                                            */s/ Ian J. Goldstein*
                                            Ian J. Goldstein (Admitted *pro hac vice*)
                                            ian@iangoldsteinlaw.com
                                            LAW OFFICES OF IAN GOLDSTEIN P.A.
                                            330 Clematis Street, Suite 209
                                            West Palm Beach, FL  33401
                                            Tel: (561) 600-0950