IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CASE NO.: 1:23-CR-00056-JKB |
| BRANDON CLINT RUSSELL. | |

**REPLY IN SUPPORT OF BRANDON RUSSELL'S MOTION TO COMPEL THE GOVERNMENT TO AFFIRM OR DENY SURVEILLANCE UNDER THE FOREIGN INTELLIGENCE SURVEILLANCE ACT, TO DISCLOSE ALL OF HIS COMMUNICATIONS SUBJECT TO THAT SURVEILLANCE, AND TO UNSEAL THE GOVERNMENT'S EX PARTE SUBMISSIONS AND THE COURT'S EX PARTE REPORT**

Patrick Toomey*
Ashley Gorski*
Sara Robinson*
AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION
125 Broad Street
New York, NY 10004
Tel: (212) 549-2500

Kobie A. Flowers (Bar No. 16511)
BROWN, GOLDSTEIN & LEVY, LLP
120 E. Baltimore Street, Suite 2500
Baltimore, MD 21202
Tel: (410) 962-1030

Ian J. Goldstein*
LAW OFFICES OF IAN GOLDSTEIN P.A.
330 Clematis Street, Suite 209
West Palm Beach, FL 33401
Tel: (561) 600-0950

**Admitted pro hac vice*

*Counsel for Brandon Russell*

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................................1

ARGUMENT ..................................................................................................................................1

    I.     18 U.S.C. § 3504 requires the government to affirm or deny whether Mr. Russell was warrantlessly surveilled under Section 702 of FISA. ................................1

          A.     18 U.S.C. § 3504 operates alongside FISA and applies here. .......................... 1

          B.     Mr. Russell has satisfied the elements of 18 U.S.C. § 3504. ........................... 7

    II.    Notice is required under 50 U.S.C. § 1806(c)..............................................................10

    III.   Due process compels notice of Section 702 surveillance and disclosure of Mr. Russell's intercepted communications.........................................................................10

    IV.   Rule 16 of the Federal Rules also requires notice and disclosure...............................14

    V.    The Court should unseal certain records related to the ex parte conference. ..............14

CONCLUSION.............................................................................................................................15

# INTRODUCTION

The government must affirm or deny its Section 702 surveillance of Mr. Russell, and it must disclose any intercepted communications to which he was a party. While the government maintains that it will not use evidence obtained or derived from Section 702 surveillance of Mr. Russell, and has refused to provide notice under 50 U.S.C. § 1806(c), that does not excuse the government from its obligation under 18 U.S.C. § 3504 to affirm or deny the fact of surveillance. Section 3504 operates alongside FISA to ensure that the criminally accused have an opportunity to challenge surreptitious surveillance even where the government seeks to minimize or conceal the role of surveillance in its investigation. This procedural protection applies in exactly the circumstances here. Similarly, due process and the Federal Rules of Criminal Procedure independently require the government to provide notice of its surveillance and to disclose Mr. Russell's intercepted communications. Finally, because the Court denied Mr. Russell's Section 1806(c) motion without prejudice, Mr. Russell has renewed his motion to address points in the Court's initial decision. Mr. Russell respectfully requests that the Court order the government to affirm or deny its Section 702 surveillance of Mr. Russell; to provide the notice required by due process, the Federal Rules, and Section 1806(c); and to disclose the intercepted communications.

# ARGUMENT

**I.     18 U.S.C. § 3504 requires the government to affirm or deny whether Mr. Russell was warrantlessly surveilled under Section 702 of FISA.**

**A.  18 U.S.C. § 3504 operates alongside FISA and applies here.**

The government is wrong to argue that 18 U.S.C. § 3504 is not applicable to Section 702 surveillance. Resp., ECF No. 160 at 4. FISA's notice provision, 50 U.S.C. § 1806(c), does not displace Section 3504 because the two provisions are not in conflict. For the very reasons highlighted by this case, they provide two distinct paths for a person subject to criminal prosecution

1

to learn whether the government used surreptitious surveillance in its investigation. In cases where the government does not affirmatively provide notice of surveillance, but there is a colorable claim it was used, Section 3504 gives the accused a means to compel the government to affirm or deny the fact of the surveillance. Section 3504 fills a specific gap that emerged with the advent of surreptitious wiretapping, ensuring that the government cannot conceal its use of surveillance and insulate it from suppression litigation simply by withholding notice. As Congress itself recognized when it enacted FISA, the protection afforded by Section 3504 applies to surveillance conducted under FISA. *See* Russell Br., ECF No. 146 at 2, 8.

The government's argument that FISA displaces Section 3504, Resp. at 5, is flatly incorrect. A statute is displaced where there is "some affirmative showing of an intention to repeal." *Morton v. Mancari*, 417 U.S. 535, 550 (1974); *see also United States v. Borden Co.*, 308 U.S. 188, 198 (1939) ("The intention of the legislature to repeal must be clear and manifest." (cleaned up)). Here, the government does not even argue there was an express repeal or limitation. It instead resorts to two inapplicable canons of construction, claiming that FISA displaces Section 3504 because it is a more specific, later-enacted statute. But those canons apply *only when two statutes directly conflict*. *See Mancari*, 471 U.S. at 550 ("In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable."); *Gallardo ex rel. Vassallo v. Marstiller*, 596 U.S. 420, 431–32 (2022) ("Gallardo argues that the later enacted § 1396a(a)(25)(H) should prevail over the earlier enacted § 1396k(a)(1)(A). But Gallardo does not identify any conflict requiring one of the provisions to prevail." (cleaned up)); *Nat'l Cable & Telecomms. Ass'n, Inc. v. Gulf Power Co.*, 534 U.S. 327, 335–36 (2002) ("It is true that specific statutory language should control

2

more general language when there is a conflict between the two. Here, however, there is no conflict.").

These canons have no application here because FISA and Section 3504 comfortably coexist. As the Supreme Court has explained, "[t]he courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence," courts must "regard each as effective." *Morton*, 417 U.S. at 551. "It is a cardinal principle of construction that repeals by implication are not favored. When there are two acts upon the same subject, the rule is to give effect to both if possible." *Borden*, 308 U.S. at 198–99; *United States v. Mitchell*, 39 F.3d 465, 472–73 (4th Cir. 1994) (similar); *State v. United States*, 7 F.4th 160, 164 (4th Cir. 2021) (similar). Here, both statutes can readily be given effect.

Section 3504 provides an avenue for a person to confirm the use of surveillance in prosecutions where the government has declined or failed to provide notice under FISA. The provisions apply in distinct scenarios. If the government believes that its trial evidence was obtained or derived from the surveillance, it provides notice under FISA. 50 U.S.C. § 1806(c). But if the government does not provide that notice, Section 3504 is available to those who can make a "colorable claim" of surveillance and requires the government simply to affirm or deny the fact of the surveillance, allowing the defense to litigate any suppression issues. *See United States v. Hamide*, 914 F.2d 1147, 1148–49 (9th Cir. 1990) (noting the applicability of Section 3504 in a FISA case); *see generally Cruz v. Alexander*, 669 F.2d 872, 874–75 (2d Cir. 1982), *decision clarified*, 708 F.2d 31 (2d Cir. 1983) (describing the function and purpose of Section 3504). This protection ensures that the accused have an opportunity to request discovery and challenge surveillance even where, as here, the government maintains that its evidence was not "derived from" secret wiretapping. Because the two provisions have distinct prerequisites and result in

different forms of notice, there is simply no conflict that requires the Court to resort to canons of statutory construction.

Section 3504 and FISA's notice provision thus comfortably coexist—just as Section 3504 comfortably operates alongside Title III's separate notice provision.[1] For both FISA and Title III, Section 3504 allows the accused to litigate key suppression questions, consistent with due process, without requiring the government to state at the outset that its evidence was derived from the surveillance. *See United States v. Apple*, 915 F.2d 899, 906 (4th Cir. 1990) (explaining that if the government affirms surveillance under Section 3504, the parties proceed to litigate taint issues, citing *Alderman v. United States*, 394 U.S. 165, 180–85 (1969)). Indeed, the government routinely recognizes that Section 3504 applies in Title III cases, notwithstanding its separate notice provision, and affirms or denies the existence of surveillance accordingly. *See, e.g.*, *In re Grand Jury Subpoena (T-112)*, 597 F.3d 189, 200 (4th Cir. 2010); *In re Weir*, 495 F.2d 879, 881 (9th Cir. 1974); *United States v. D'Andrea*, 495 F.2d 1170, 1173 (3d Cir. 1974). The government offers no reason why Section 3504 would conflict with FISA's similar notice requirement. *See also United States v. Abdel Sattar*, No. 02-cr-395, 2002 WL 1836755, at *5 (S.D.N.Y. Aug. 12, 2002) (discussing the similarities between Title III's and FISA's notice requirements).

By contrast, in each of the cases cited by the government where courts applied canons of construction, the statutes at issue presented obvious conflicts. *See* Resp. at 5; *Gozlon-Peretz v. United States*, 498 U.S. 395, 406–07 (1991) (contradictory effective dates meant that supervised release terms applied under one statute but not under another statute); *Bloate v. United States,* 559

---

[1] Like FISA, Title III requires notice when the contents of intercepted communications "or evidence derived therefrom" will be "received in evidence or otherwise disclosed in any trial, hearing, or other proceeding," *see* 18 U.S.C. § 2518(9)—a requirement that exists alongside 18 U.S.C. § 3504 without conflict.

4

U.S. 196, 207 (2010) (two provisions of the Speedy Trial Act applied; one called for time to be excluded and the other did not); *Acosta v. Gonzales,* 439 F.3d 550, 555 (9th Cir. 2006) (one statute made a person inadmissible to the United States, while the other made the same person eligible for admissibility); *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000) (one statute required the FDA to remove tobacco from the market, while other statutes called for the regulation, but not removal, of tobacco); *Nutrition Health All. v. Food & Drug Admin.,* 318 F.3d 92, 102 (2d Cir. 2003) (one statute conferred jurisdiction on the FDA to regulate dietary supplements; another statute conferred jurisdiction on a different agency).

This case instead resembles *Brotherhood of Maintenance of Way Employees v. CSX Transportation, Inc.*, 478 F.3d 814 (7th Cir. 2007), which the government also cites. *See* Resp. at 5. But there, the Seventh Circuit did not actually apply the "later enacted" canon, because it was "not convinced that the Acts are incapable of reconciliation." *Bhd. of Maint. of Way Emps.*, 478 F.3d at 817–18. One statute governed what railroads "must" do, while the other told employers what they "may" do. *Id.* at 818. Finding no conflict, the court required the railroads to comply with both laws. *Id.* at 820. Similarly, here, the statutes are readily "capable of reconciliation," because the government can follow both statutes without producing contradictory results. And given the lack of conflict, the government has no choice but to fulfill its obligations under both statutes.

The express language of FISA confirms that the statutes do not conflict. FISA specifically contemplates that motions related to FISA surveillance may be made under statutes outside of the FISA regime. *See* 50 U.S.C. § 1806(f) (specifying that FISA's disclosure procedures apply in several circumstances, including "whenever *any* motion or request is made by an aggrieved person pursuant to *any other statute*" (emphases added)); *Hamide*, 914 F.2d at 1148–49 (government

5

confirmed under 18 U.S.C. § 3504 that it had surveilled defendants and subsequently utilized FISA disclosure procedures). Motions under Section 3504 easily fit within this statutory catch-all.

Indeed, Congress well understood that the two statutes would work in tandem when it enacted FISA. Although the government tries to minimize the legislative history as irrelevant, Resp. at 5–6, the Fourth Circuit has explained that "[d]etermination of whether statutes may coexist requires an inquiry into the legislative history and the language of the statutes themselves." *Mitchell*, 39 F.3d at 472. Here, the legislative history shows that Congress intended the statutes to operate alongside one another. *See* S. Rep. 95-701, at 63 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 3973, 4032 (describing use of 18 U.S.C. § 3504 in the FISA context); *Wikimedia Found. v. Nat'l Sec. Agency*, 335 F. Supp. 3d 772, 782 n.7 (D. Md. 2018), *aff'd*, 14 F.4th 276 (4th Cir. 2021) (citing the Senate Report in concluding that in FISA cases, "a defendant could query the government under 18 U.S.C. § 3504, discover that he has been intercepted by electronic surveillance and then move to suppress or to discover or obtain information related to that surveillance [under FISA]" (cleaned up)). The Congress that enacted FISA was well aware of Section 3504, anticipated that it would be invoked in FISA cases, and deliberately drafted FISA's catch-all language to encompass such motions.

In short, because FISA and Section 3504 do not conflict, both statutes apply here.[2]

---

[2] The government's passing assertion that Section 3504 did not require disclosure of FISA surveillance in a grand jury proceeding has no bearing on this case. *See* Resp. at 4 n.1; *In re Grand Jury Subpoena (T-112)*, 597 F.3d at 201. The court's conclusion was based on its finding that FISA's notice provision does not reach grand jury proceedings. *See id.* at 198. But this is not a grand jury proceeding—it is a criminal prosecution, a proceeding plainly within the scope of both FISA and Section 3504—and so that distinction has no relevance here.

### B.  Mr. Russell has satisfied the elements of 18 U.S.C. § 3504.

The government's claim that Mr. Russell has not shown a "colorable basis" sufficient to trigger 18 U.S.C. § 3504 is entirely unsupported. Resp. at 6. The government ignores the extensive case law cited by Mr. Russell, which unequivocally shows that a movant can rely on factual inferences to establish a colorable showing. *See* Russell Br. at 10 (citing *Matter of Archuleta*, 434 F. Supp. 325, 327 (S.D.N.Y. 1977); *United States v. Carter*, No. 19-cr-819, 2020 WL 7490401, at *4 (N.D. Ill. Dec. 21, 2020); *United States v. Osborne*, 424 F. Supp. 70, 72 (E.D. Pa. 1976)). Mr. Russell's claim is based on reasonable inferences analogous to those in the cited cases. For example, in *United States v. Osborne*, the court found that the movant "clearly" was a "party aggrieved" under the statute given inferences from amorphous "clicking noises" on his phone and the police department's history of using illegal electronic surveillance more generally. 424 F. Supp. at 70, 72. Here, Mr. Russell's claim is based on eleven specific facts in the FBI's disclosures about its use of warrantless Section 702 queries, and the fact that no other public prosecution contains allegations consistent with the FBI's statements. That is a far cry from "pure speculation." Resp. at 6.

Mr. Russell's showing is much more substantial than the bare allegation rejected in *United States v. James*, 609 F.2d 36, 51 (2d Cir. 1979). *Compare* Resp. at 6. In *James*, the accused's only support for the existence of surveillance was the fact that a particular police unit participated in the investigation. *James*, 609 F.2d at 51. The accused provided no information as to why the presence of that unit made unlawful surveillance more likely. In contrast, here, Mr. Russell is not merely relying on the fact that the FBI participated in the investigation of him or that Section 702 surveillance exists; instead, he has made a specific, colorable showing based on inferences from the FBI's own detailed disclosures and counsel's comprehensive search of public dockets.

7

The government argues that Mr. Russell has not identified a colorable basis to believe that there was an "unlawful act," Resp. at 7, but as the Fourth Circuit has recognized, only "a positive statement that illegal surveillance has taken place" is required. *Apple*, 915 F.2d at 905. In his opening brief, Mr. Russell explained that Section 702 surveillance—including warrantless querying of Mr. Russell's communications—violates the Fourth Amendment and Article III of the Constitution. Russell Br. at 9. That is more than enough to constitute "a positive statement." The government's own view that the surveillance was lawful is irrelevant to the Section 3504 inquiry. *See In re Lochiatto*, 497 F.2d 803, 806 (1st Cir. 1974) ("[W]e find no basis in the statute for concluding that prosecutorial say-so is a sufficient guarantee of lawfulness[.]"); *In re Grand Jury Proc.*, 524 F. Supp. 87, 89 (E.D. Pa. 1981) (the government's "opinion on the legality" of surveillance is irrelevant).

Not only is the government's argument about the legality of Section 702 surveillance irrelevant, but it is also wrong on the merits. *See* Resp. at 7 (citing *United States v. Hasbajrami*, 945 F.3d 641, 646 (2d Cir. 2019)). The lawfulness of Section 702 surveillance is not a settled matter. No public court has ever ruled on the legality of querying U.S. persons' communications under Section 702, which is squarely at issue here. *See Director Wray's Remarks to the ABA Standing Committee on Law & National Security*, at 9 FBI (Apr. 9, 2024), https://bit.ly/3X1ieoA (Ex. B, Mot., ECF No. 107) (discussing querying of "U.S. person's identifiers in our 702 collection"). In fact, in *Hasbajrami*—the case the government cites—the Second Circuit acknowledged in a groundbreaking decision that querying has "important Fourth Amendment implications, and those implications counsel in favor of considering querying a separate Fourth Amendment event that, in itself, must be reasonable." *Hasbajrami*, 945 F.3d at 670. The Second Circuit then remanded the issue to the district court for further factual development. *Id.* at 673.

8

More broadly, neither the Supreme Court nor the Fourth Circuit has decided whether the warrantless *collection* of U.S. persons' communications under Section 702 is lawful.

The government's reliance on *United States v. Muhtorov*, 20 F.4th 558, 631 (10th Cir. 2021), is also misplaced. Resp. at 7. In the cited portion of the decision, the court considered whether 18 U.S.C. § 3504 applied to "non-FISA and non-Section 702 surveillance" that Muhtorov claimed may have been used in his case. *Id.* at 626–27. Muhtorov did not provide any particularized basis for his belief that those surveillance tools were used by the government. *Id.* at 626–27, 631. That is not what happened here. Mr. Russell relies on sound inferences sufficient to show a colorable basis that he is an aggrieved party. He has also made a "positive statement" of unlawfulness, which is all that is required in the Fourth Circuit. *Apple*, 915 F.2d at 905.

Finally, the government's unsupported claim that merely affirming or denying the surveillance of Mr. Russell would reveal classified information does not excuse the government from complying with 18 U.S.C. § 3504. *See* Resp. at 2. As an initial matter, the FBI has already publicly disclosed its reliance on Section 702 to thwart a particular plot in both the media and at an ABA luncheon; the government has not explained why it cannot disclose similar information to the defense in a criminal proceeding. Second, a boilerplate notice merely affirming or denying that Mr. Russell was subject to FBI surveillance would not reveal which foreigners are (or are not) targeted under the Section 702 program.[3] But most importantly, the government's obligation to comply with a duly enacted statute overcomes any classification claim—just as 50 U.S.C.

---

[3] For example, because Section 702 surveillance is conducted by multiple agencies, using multiple techniques, and encompassing a variety of communications providers, *see* PCLOB Report at 59–65, merely confirming or denying the Section 702 surveillance of Mr. Russell in this prosecution does not disclose which foreigners are or are not subject to surveillance, whether by the FBI or other agencies.

§ 1806(c) requires the government to provide notice of classified FISA surveillance.[4] That is all the more true because Section 3504, like other statutory notice requirements, implements due process protections, ensuring the criminally accused have an opportunity to challenge the use of surreptitious surveillance by the government. *See* Russell Br. at 12–17.

II.     **Notice is required under 50 U.S.C. § 1806(c).**

The government's sole argument with respect to 50 U.S.C. § 1806(c) is that the Court has already decided this issue and it should not be reconsidered. Resp. at 3. But the government has yet to address any of the Section 1806(c) arguments Mr. Russell made in either his first motion to compel or in his second motion. Nor has the Court publicly explained how it interpreted or applied the statute notwithstanding the critical question of when evidence is "derived from" Section 702 surveillance, including from FBI queries targeting U.S. persons like Mr. Russell. For the reasons in Mr. Russell's opening brief, *see* Russell Br. at 17–23, 24–26, the Court should order the government to provide notice under the statute.

III.    **Due process compels notice of Section 702 surveillance and disclosure of Mr. Russell's intercepted communications.**

The government claims that the "only authority" Mr. Russell cites in support of his due process argument is *United States v. Belfield*, 692 F.2d 141 (D.C. Cir. 1982), *see* Resp. at 8, while ignoring more than two pages of case law explaining why due process compels notice and disclosure. *See* Russell Br. 13–15 (discussing *United States v. Gamez-Orduno*, 235 F.3d 453, 461 (9th Cir. 2000); *Smith v. Black*, 904 F.2d 950, 965–66 (5th Cir. 1990), *vacated on other grounds*, 503 U.S. 930 (1992); *United States v. Moalin*, 973 F.3d 977, 1000 (9th Cir. 2020); *Berger v. New*

---

[4] The government has repeatedly provided Section 702 notice notwithstanding the fact that it considers such surveillance classified. *See, e.g.*, *United States v. Khan*, No. 12-cr-659, ECF No. 59 (D. Or. Apr. 3, 2014); *United States v. Al-Jayab*, No. 16-cr-181, ECF No. 14 (N.D. Ill. Apr. 8, 2016); *United States v. Kandic*, No. 17-cr-449, ECF No. 28 (E.D.N.Y. Aug. 23, 2018).

*York*, 388 U.S. 41, 60 (1967); *Dalia v. United States*, 441 U.S. 238, 247–48 (1979); *United States v. Freitas*, 800 F.2d 1451, 1456 (9th Cir. 1986); *United States v. Leon*, 468 U.S. 897, 906 (1984)). For the reasons discussed in Mr. Russell's opening brief, under clear—and uncontested—due process principles, notice and disclosure are required.

Notice of Section 702 surveillance is also required under *Belfield*. The government argues that *Belfield* runs against notice because the D.C. Circuit held that a different question—the lawfulness of the surveillance—could ultimately be decided using ex parte material. Resp. at 8–9. But the government conflates distinct elements of the decision in *Belfield*, ignoring what the court said about the threshold issue of notice. At the threshold, the D.C. Circuit recognized that due process provides an "alternative" path to litigate FISA surveillance, "even when the Government has purported not to be offering any evidence obtained or derived from [FISA] surveillance." *Belfield*, 692 F.2d at 146 & n.22 (citing *United States v. Alderman*, 394 U.S. 165 (1969) (cleaned up)). In particular, "a criminal defendant may claim that he has been the victim of an illegal surveillance and seek discovery of the logs of the overhears to ensure that no fruits thereof are being used against him." *Id.* at 146. That is exactly what the defendants did in *Belfield* to learn of the FISA surveillance—and what Mr. Russell has done here. *See id.* at 143 ("Prior to trial, appellants requested disclosure of any electronic surveillance covering them. The Government answered that each appellant was overheard once on separate occasions during the course of electronic surveillance authorized by the U.S. Foreign Intelligence Surveillance Court (USFISC) pursuant to [FISA]."). The government affirmed the surveillance, as required by due process, while it sought to withhold the detailed wiretapping logs under FISA. *Id.* In short, *Belfield* recognizes an independent path to obtain notice of FISA surveillance, even when the government claims 50 U.S.C. § 1806(c) does not apply. Mr. Russell finds himself in precisely that scenario.

11

The government seeks to deflect attention from this portion of the D.C. Circuit's decision, focusing instead on what happens next under FISA. Resp. at 8–9. As *Belfield* explains, after the government affirms the surveillance, it has a choice. It can provide discovery of the logs to the defense as in the ordinary case, or it can invoke FISA's procedures and immediately ask the court to rule on the lawfulness of the surveillance. *See* 50 U.S.C. § 1806(f); *Belfield*, 692 F.2d at 143–44, 146.[5] At that stage, FISA's procedures allow the government to submit certain materials relevant to the lawfulness question ex parte. 50 U.S.C. § 1806(f). But what matters here, and what *Belfield* recognized consistent with both FISA and due process, is that the government must acknowledge the surveillance in the first place so that the defense can pursue discovery and suppression litigation.

The government argues that *United States v. Alderman*, 394 U.S. 165 (1969), is irrelevant to Mr. Russell's notice and disclosure claims, but it was a watershed decision for wiretapping litigation that bears heavily on these issues (as the *Belfield* court noted). The government argues that, in *Alderman*, "the parties *agreed* that there had been unlawful surveillance." Resp. at 9 (emphasis in original). But nothing in *Alderman* turns on the fact that the government conceded that its surveillance had been unlawful. The Supreme Court's central holding—that taint issues must be litigated in an adversarial proceeding, *see* Russell Br. at 15–16—applies regardless. Indeed, it would make little sense if due process required disclosure of surveillance to enable an informed motion to suppress, but *only where the government agrees its search was unlawful*. Because a motion to suppress is the primary vehicle for determining the legality of the surveillance, the government's reading of *Alderman* is untenable. At bottom, just as disclosures were required

---

[5] If the person accused was not surveilled at all, then the government must provide the defense with an unequivocal denial—and that is the end of the matter.

12

in *Alderman*, a case concerning "the national defense of the United States," 394 U.S. at 169, so too are they required here. If the government wishes to "forestall" that requirement at this stage, it must acknowledge the surveillance and invoke the procedures specified under FISA. *Belfield*, 692 F.2d at 146; *see* 50 U.S.C. § 1806(f) (permitting the government to defer discovery pending litigation over the lawfulness of surveillance, but only upon the public filing of an affidavit by the Attorney General).[6]

The government also argues that Mr. Russell's reliance on cases decided prior to the enactment of Section 702 is improper. Resp. at 9 n.2. But cases like *Alderman* and *Belfield* sound in constitutional due process, which by its very nature cannot be eliminated by statute.[7] Moreover, the government does not contest that the accused's due process rights override any concern that notice of the surveillance is classified. *See* Russell Br. at 14 (citing *United States v. Moussaoui*, 382 F.3d 453, 471–72 (4th Cir. 2004) ("[A] defendant becomes entitled to disclosure of classified information upon a showing that the information 'is relevant and helpful to the defense.'" (citation omitted))); *see also United States v. Smith*, 780 F.2d 1102, 1107 (4th Cir. 1985) (similar); *United States v. Fernandez*, 913 F.2d 148, 154 (4th Cir. 1990) (similar). In sum, due process compels notice and disclosure here.

---

[6] Congress drafted FISA with *Alderman*'s due process holding directly in mind. *See* S. Rep. 95-701, at 64–65 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 3973, 4033–34. The statute allows the government to defer disclosure of the intercepted communications, as required by *Alderman*, while the parties first litigate the lawfulness of the surveillance using FISA's discovery and suppression procedures. *See* 50 U.S.C. § 1806(f)–(g). If the Court finds the surveillance unlawful, then disclosure of the intercepts under *Alderman* proceeds.

[7] If anything, under the canon of constitutional avoidance, the court should interpret FISA's notice provision expansively to avoid deciding due process questions. Russell Br. at 23.

13

### IV. Rule 16 of the Federal Rules also requires notice and disclosure.

The government asserts—without relying on any authority—that Mr. Russell has not "establish[ed] materiality" for purposes of Rule 16(a)(1)(E), and so notice and disclosure are not required under the rule. Resp. at 10–11. But the government says nothing to rebut Mr. Russell's main argument, *i.e.*, materiality is a broad concept that encompasses discovery "related to the constitutionality of a search or seizure." Russell Br. at 24 (quoting *United States v. Soto-Zuniga*, 837 F.3d 992, 1000 (9th Cir. 2016) and citing other authorities). With that point uncontested, the government must disclose the collected materials because they would allow Mr. Russell to bring an informed motion to suppress. Moreover, Mr. Russell's intercepted communications, like other discovery turned over in this case, are "relevant written and recorded statements made by him," simply because he is a party to them. *See* Resp. at 10 (discussing Fed. R. Crim. P. 16(a)(1)(B)); Russell Br. at 24. Nothing in the government's brief calls into question the applicability of these rules to the disclosures at issue here.

### V. The Court should unseal certain records related to the ex parte conference.

The government relies on Mr. Russell's consent to an ex parte conference to justify the continued withholding of all records associated with that conference. Resp. at 11–12. The government focuses on consent because there is no free-floating entitlement to withhold purportedly classified information from the defense in a criminal proceeding, and the government has not invoked the District of Maryland's sealing procedures or the Classified Information Procedures Act ("CIPA"). *See* Russell Br. at 27–28. Mr. Russell consented to an ex parte conference to facilitate the Court's understanding of one predicate question as it weighed how to proceed: whether Mr. Russell was surveilled under Section 702 or not. At the same time, Mr. Russell was emphatic—as he has been throughout this litigation—that intertwined legal and

14

factual issues related to whether the government's evidence was "derived from" surveillance of Mr. Russell had to be litigated in an adversarial proceeding. Hearing Tr., ECF No. 160-1 at 57, 60–67; Mem., ECF No. 134 at 12; Mem., ECF No. 143 at 2–3.

To the extent that records from the ex parte conference address matters beyond the narrow factual question of whether Mr. Russell was subject to Section 702 surveillance, his consent does not permit the blanket sealing of those records. Indeed, the defense could not know in advance what the government would seek to submit to the Court and whether that would warrant permanent sealing. As a result, the government's effort to permanently seal its submissions to the Court must still satisfy the District of Maryland rules and related standards for filing documents ex parte and under seal in a criminal proceeding. If some or all of the records do not meet the applicable standards—for instance, because portions of the documents contain legal analysis or other information that can be segregated from properly sealed information—redacted versions should be filed on the public docket.

## CONCLUSION

For the foregoing reasons, Mr. Russell respectfully requests that the Court compel the government to: (1) provide notice of its Section 702 surveillance of his communications or otherwise affirm or deny the surveillance; (2) disclose all of his communications that were the product of such surveillance; and (3) unseal the portions of the materials and report from the July 23, 2024 ex parte conference insofar as they address matters beyond the factual question of whether his communications were subject to Section 702 surveillance.

Dated: October 3, 2024                                           Respectfully submitted,

                                                                 /s/ Patrick Toomey
                                                                 Patrick Toomey*

15

Ashley Gorski*
Sara Robinson*
AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION
125 Broad Street, 17th Floor
New York, NY 10004
Tel: (212) 549-2500

Kobie A. Flowers (Bar No. 16511)
BROWN, GOLDSTEIN & LEVY, LLP
120 E. Baltimore Street, Suite 2500
Baltimore, MD 21202
Tel: (410) 962-1030

Ian J. Goldstein*
LAW OFFICES OF IAN GOLDSTEIN P.A.
330 Clematis Street, Suite 209
West Palm Beach, FL 33401
Tel: (561) 600-0950

**Admitted pro hac vice*

*Counsel for Brandon Russell*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was electronically filed via CM/ECF which will serve all parties of record on this 3rd day of October, 2024.

            Respectfully submitted,

            /s/ Patrick Toomey
            Patrick Toomey (admitted *pro hac vice*)
            AMERICAN CIVIL LIBERTIES UNION
             FOUNDATION
            125 Broad Street, 17th Floor
            New York, NY 10004
            Tel: (212) 549-2500